IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ALEXANDER LANE RABORN**                                **PLAINTIFF**
**#173907**

v.                   **No: 4:22-cv-00834-LPR-PSH**

**McFADDEN**, *et al.*                                         **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Alexander Lane Raborn filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (Doc. No. 2) while incarcerated at the Pulaski County Detention Facility ("PCDF"). Raborn's complaint was filed on behalf of numerous inmates also housed at the PCDF; in accordance with court policy, a separate case was

opened for each plaintiff. Raborn was granted leave to proceed *in forma pauperis*. Doc. No. 3. The Court invited Raborn to file an amended complaint to clarify his claims. Doc. No. 4. Raborn was informed that he could not sue on behalf of other inmates and could only bring factually related claims against multiple defendants. *Id.* Because Raborn did not file an amended complaint, the Court screens his original complaint.

## I. Screening Standard

Federal law requires courts to screen prisoner complaints. 28 U.S.C. § 1915A, 1915(e)(2). Claims that are legally frivolous or malicious; that fail to state a claim for relief; or that seek money from a defendant who is immune from paying damages should be dismissed before the defendants are served. 28 U.S.C. § 1915A, 1915(e)(2). Although a complaint requires only a short and plain statement of the claim showing that the pleader is entitled to relief, the factual allegations set forth therein must be sufficient to raise the right to relief above the speculative level. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ."). While construed liberally, a *pro se* complaint must contain enough facts to state a claim to relief that is plausible on its face, not merely conceivable.

## II. Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or by federal law. 42 U.S.C. § 1983.

Raborn is a pre-trial detainee. Doc. No. 2 at 5. Raborn sues PCDF officers McFadden, Daniels, Robinson, and Grant. He alleges that each of them was responsible for 190 inmates due to link doors being open on various dates in July and August of 2022. *Id.* at 6-7. Raborn claims the understaffing at the PCDF resulted in the loss of showers, recreation time, access to the law library, access to the kiosk and phones, and/or mail. *Id.* at 6-7. He generally alleges this affected his ability to plan his defense or have oral hygiene. *Id.* at 7. Raborn fails to state a claim upon which relief may be granted, for the reasons described below.

1. *No Personal Involvement in Understaffing*

A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). Raborn complains that each guard was

responsible for 190 inmates on the dates in question because link doors were open, and that as a result, he was unable to leave his cell for various activities such as recreation or the law library. He does not explain why those doors were open or describe who was responsible for their being open. He does not allege who was responsible for inadequate staffing within the facility which resulted in only one guard being assigned to 190 inmates on the dates in question. Essentially, Raborn alleges that understaffing resulted in the loss of his rights, but does not allege that any of the named defendants were responsible for the understaffing. He therefore fails to state a claim against the named defendants. *See e.g. Baker v. Thorn*, No. 5:21-CV-05084-KES, 2022 WL 280226, at *6 (D.S.D. Jan. 31, 2022) ("Although Baker describes conditions at the Pennington County Jail that may constitute a violation of his due process rights, he does not make specific allegations that the individual defendants either caused these conditions or failed to train or supervise those that caused them."); *Northup v. Bell*, No. 6:11CV222, 2012 WL 2814307, at *12 (E.D. Tex. June 12, 2012), *report and recommendation adopted*, No. 6:11CV222, 2012 WL 2813973 (E.D. Tex. July 9, 2012) ("In the absence of any evidence that understaffing resulted from the deliberate indifference of any of the

defendants named in connection with this claim, Northup has failed to show a constitutional violation and his claim on this point is without merit.").[1]

### 2. Access-to-Courts Claim

To the extent Raborn sues the defendants because they did not allow him access to the law library, his attorney, or legal documents, he fails to describe sufficient facts to state a viable First Amendment access-to-courts claim. In *Bounds v. Smith*, the U.S. Supreme Court recognized that prisoners' constitutional right of access to the courts is well-established. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, to succeed on a claim for a violation of the right of meaningful access to the courts, a prisoner must establish that he or she suffered an actual injury or prejudice caused by the denial of access to legal materials, counsel, or the courts. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). *See also White v. Kautzky,* 494 F.3d 677 (8th Cir. 2007) ("To prove a violation of the right of meaningful access to the courts,

---

[1] Allegations of understaffing may support a constitutional claim where defendants are deliberately indifferent to the conditions caused by understaffing. *See Buckley v. Rogerson*, 133 F.3d 1125, 1130–31 (8th Cir. 1998) (quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986) (holding that "systemic deficiencies" such as inadequate staffing "can provide the basis for a finding of deliberate indifference"); *Burke v. Regalado*, 935 F.3d 960, 1000 (10th Cir. 2019) (holding that understaffing was a policy or custom that caused inmate's death, and that the Sheriff was deliberately indifferent to the harm such understaffing and poor training could cause.); *Robertson v. Kent*, No. CV 20-442-JWD-SDJ, 2020 WL 5372242, at *3 (M.D. La. Aug. 14, 2020), *report and recommendation adopted,* No. CV 20-442-JWD-SDJ, 2020 WL 5369066 (M.D. La. Sept. 8, 2020) ("Knowledge of prison under-staffing and a decision not to increase the number of guards on duty may amount to deliberate indifference to the safety and well-being of the inmates, in violation of the Eighth Amendment.") (citing *Edwards v. Gilbert*, 867 F.2d 1271 (11th Cir. 1989); *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985)).

a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."). The injury requirement "is not satisfied by just any type of frustrated legal claim." *Lewis,* 518 U.S. at 354. The claim must involve an attempt by the inmate to pursue direct appeal from a conviction for which he or she is incarcerated, a habeas petition, or an action under 42 U.S.C. § 1983 to vindicate the violation of a basic constitutional right. *Id.* at 355 ("The tools [required by *Bounds*] are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."). Raborn has not described any pending legal action that was impacted by his inability to access the law library or communicate with his attorney on the dates in question. Accordingly, his access-to-courts claim should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

    3.    *Conditions-of-Confinement Claim*

Raborn also describes insufficient facts to support a conditions-of-confinement claim. A pretrial detainee's conditions of confinement claim falls under the due process clause of the Fourteenth Amendment, which prohibits pretrial

detainees from being confined in conditions that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906-07 (8th Cir. 2020). The "government may detain defendants pretrial and may subject them to the restrictions and conditions of a detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Stearns,* 957 F.3d at 907 (quoting *Bell*, 441 U.S. at 536–37). Obviously, pretrial conditions are punishment if they are "intentionally punitive." *Id*. Less obviously, pretrial conditions constitute punishment if they are "not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* Stated differently, pretrial conditions can be deemed punishment if they are "arbitrary or excessive." *Id.*; *see also Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021).

Raborn alleges that he was denied access to showers, recreation time, phones, the kiosk (presumably for filing medical requests or grievances), and mail on various dates due to the lockdown caused by understaffing. In most instances the lockdowns occurred for two or three days at a time, with the longest lasting four days (July 4 through July 7). He alleges no specific injury as a result of these conditions.[2] His

---

[2] "Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (citing *Carey v. Piphus*, 435 U.S. 247, 253-55 (1978)); *see also Johnson v. State of Mo.*, 142 F.3d 1087, 1088 (8th Cir. 1998) ("'To establish standing, a party must, at a minimum, have suffered an 'injury-in-

allegations simply do not indicate that he was subjected to arbitrary or excessive conditions that were punitive in nature. Rather, Raborn's allegations imply that these conditions were the result of overcrowding or understaffing at the PCDF during the dates in question. Accordingly, Raborn's conditions-of-confinement claims should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### III. Conclusion

For the reasons stated herein, it is recommended that:

1. Raborn's claims be dismissed without prejudice.

2. Dismissal of this action count as a "strike" within the meaning of 28 U.S.C. § 1915(g).

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from the order adopting this recommendation would not be taken in good faith.

SO RECOMMENDED this 21st day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

fact,' fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision.'") (quoting *Brouhard v. Lee*, 125 F.3d 656, 661 (8th Cir. 1997)).